Our fourth case for this morning is Gary Sgouros v. Trans Union Corporation. Mr. O'Neill. Thank you, Your Honor. May it please the Court, Michael O'Neill on behalf of the District Court's ruling denying our motion to compel arbitration on the basis that the plaintiff did not have sufficient notice of the service agreement that was displayed prominently on the webpage at issue. The sole issue before this Court is whether or not the District Court erred in determining that the TU Interactive website did not provide reasonable notice or alternatively constructive notice that the purchase of a credit score through that website was subject to the terms of the service agreement. So I'm looking at tab D in your brief, which is a And, you know, there's this little box that's a scrollable box. It says service agreement. And then a green thing that says printable version, although it doesn't say of what. You know, it could be the whole page, actually. And then this language in bold, you understand that by clicking on the quote, I accept and continue to step three button below, you're giving these instructions. I won't read the whole thing. So the common sense reading of all of this is that it's this boldface paragraph that has told you what the consequences of clicking on I accept and continue to step three are. And they aren't I accept the service agreement and give instructions or anything. I mean, I think that, you know, that that's the most straightforward way to understand this. Frankly, I mean, a lot of these scrollable boxes have the accept service agreement at the bottom of the scroll box so that you can be sure that you know what you're accepting. But this is nothing. This is you understand that by clicking on this, you're giving instructions. It doesn't say anywhere. You're agreeing to the service agreement. In your honor, as you well know, that's exactly what the district court focused on. I know. And I'm just, I'm just looking at this thing. Right. We're looking at this page. What the district court focused on, the district court said is there has to be some separate statement, I accept the terms of the service agreement. And you can't find that in Illinois law. What Chief Judge Wood just asked and what troubles me is that this web page seems to have a specific declaration of what I accept and continues to step three means. Right. It says you understand that by clicking, I am authorizing TransUnion to obtain information. So it seems that TransUnion itself wrote the web page and it says this means something other than I agree to the service agreement. TransUnion can write what it wants, but if you're affirmatively distracting the user away from the service agreement and toward the I authorize the use of information, does that create a contract as a matter of Illinois law? Is there some Illinois case you're relying on for the proposition that you can affirmatively distract the other contracting party and still form a contract? Well, your honor, I believe there's a couple cases that are relevant to your point, including the Hubbard case. Hubbard doesn't say that. Your honor, if I may, two points. One, we believe the district court erred by focusing solely on the small print paragraph underneath the box. You want it to focus on the small print in the box. It isn't even visible in the box. And I want to just join something that Judge Easterbrook just said. To the extent one might read the district court opinion as saying only certain kinds of statements will do, I would not agree with that. But what I would say is that somehow or another, you've got to get the message through that clicking means you agree with the service agreement. If that orange box were a little fatter and it said, I accept the service agreement and continue, that might be fine. Having the I accept inside the scrollable box might be fine. I can imagine all sorts of things that would get the job done. Actually under Hubbard, if you just omitted that last paragraph, that might be enough. It might, but the problem is this bold-faced paragraph says this is what clicking the button means. And people are very sensitive these days, by the way, to giving permission to use their personal information. We live in a world of identity theft. We live in a world of concern about that. So I don't take this paragraph as at all something that a reasonable customer would think was meaningless. I think to the contrary. Your Honor, I understand the concerns expressed by the court. However, the district court erred in assuming that the only way Mr. Segaris are a reasonably prudent internet user, which is the term, the district court erred in believing that the only way Mr. Segaris could agree to the terms of the service agreement was to click on that button. Right. Look, let's suppose everything bad you say about the district court opinion is right. That the district court was relying on federal cases rather than genuine state law. That there's no need in Illinois for a separate agreement to a separate click agreement. What remains is still this last bold-faced paragraph, which seems to be saying exactly what clicking on this button means, and it isn't approving the service agreement. Absolutely, Your Honor. Absolutely. But you can't read out of the whole of the webpage the service agreement. But we don't have any idea how you agree to the service agreement. For all he knows, it's on step three of three, or it's at the bottom of the scrollable box or something. Your problem is it isn't linked to this orange button. Two points in response, Your Honor. The fourth sentence of the agreement, in all capital letters, says that you agree to the terms of this service agreement. It's not visible on this page. You're absolutely right, Your Honor. But the question is, did the page as a whole... I'm not sure that that's sustainable on this page. Your Honor, there's no way that Mr. Chigoris or the public could purchase a credit score without being subject to the terms of the service agreement. How does he know that, though? And especially... Because there's a box that says service agreement that references terms and conditions upon which you buy products over this internet. But you have to agree to it. And you agree to it by completing the purchase. Well, you're saying that, but it doesn't say that either. Your Honor, just like this court recognized... It just doesn't say that. I don't understand why a company like TransUnion came up with this web page, actually. And I'm sure you either will or have fixed it. Well, I'll tell you, Your Honor, part of it is just what you said, that people are very concerned about the use of their information. And so we needed to get express written instructions from the consumer to allow TU Interactive to go to the bureaus to get your credit data to form a credit score. However, we can't lose sight of the fact that in many cases that the district court ignored, including Pro CD, in which this court... Pro CD is an interpretation of Wisconsin law. And for you to rely on Pro CD is as bad as for the district court to rely on the Ninth and Second Circuits. We need to figure out what Illinois law does. Your Honor, I wasn't referring to the ruling in the Pro CD case. But the district court referenced the instructions on the back of an airline ticket or on the back of a concert ticket, that it's understood... Yeah, look, it may be fine. I've already said this. If there had been no separate button or no separate paragraph, the very fact that you had put these terms on the webpage for anybody to scroll might be enough as a matter of Illinois law. And Hubbard might support that view. But the problem is you then put in this bold-faced box which says something different. If the front of the cruise ticket in Carnival Cruise Lines had said, and oh, by the way, the back of this ticket is irrelevant, then those terms wouldn't have been binding as a result of Florida law. I will bet you anything. Right? And that's the problem here. It looks like this bold-faced paragraph is saying what you're agreeing to, and it's something different from the service agreement. Your Honor, I think the analogy to the concert ticket is the front of the ticket says you have a right to enter the arena at this time and see this band. It didn't say ignore the back of the ticket. And nothing in this authorization paragraph suggests that you can ignore the service agreement or the service agreement is just surplusage. But what it doesn't tell you is what step do you take to signify your acceptance of that service agreement. It doesn't say by continuing to page, to step three, you're accepting it. It doesn't say by clicking this button, which I think would have been very easy to have done. It would have been a very minor adjustment in the page. It doesn't say, you know, as I said, a lot of things, I feel like I've seen a million of these. But anyway, you know, after you scroll down at the bottom, you have to click yes, I agree, before it will even let you go to the next box. This is not beyond TransUnion's ability to design the way you apparently want it to operate. Absolutely, Your Honor. The question for us is though, did you do it here? And if you did, then there's an arbitration agreement that applies. And if you did not, there is no agreement that's been formed. This court in Keene v. Chappell said that an offeror need not identify the specific method by which the offer can be accepted. But that doesn't answer the problem that Judge Easterbrook has been pointing out either, because there needs to be some way that you signify your agreement to the service agreement. Your Honor. Something. I think that the fact that you have this prominent box under the heading service agreement with obvious contractual terms, service agreement, terms and condition. The Illinois Appellate Court in the Hubbard case. But it's not under the service agreement. It's under the paragraph which expressly states what clicking that button does. Your Honor, I understand and I will absolutely agree that the authorization paragraph does not give the user an indication that they are accepting the terms of the service agreement by clicking the button. Nor does the orange button say that. Correct. But the point is that the user was put on notice, constructive notice, inquiry notice, as the court in Hubbard said. When you see references to terms and conditions on a website, you should be put on notice that not surprisingly in this day and age, everyone knows that Internet transactions which involve purchases of goods or services are going to be accompanied by terms and conditions and an agreement. This court cannot. And this paragraph tells you what you're agreeing to. You understand that by clicking on the button, you are providing written instructions, etc. Yes. Well, fine. People understand that you agree to terms when you sign up on the Internet and those are the terms. Your Honor, again, we're not saying that that is the way that Mr. Segoras accepted the terms and conditions. The website as a whole, the graphics, the box, the heading service agreement, reference to terms and conditions, clearly put a reasonably prudent Internet user on notice that there would be some contract terms associated with the purchase of a credit score over the Internet. Mr. Segoras was clearly put on notice that that was the case. He submitted a very short cursory affidavit in this case. Not once did he ever suggest that he believed clicking on this was... Who cares what anybody believed? The theory of contract in Illinois is objective. It's based on the signs exchanged between the parties and that depends on what the website said. It doesn't depend on what's in anybody's head. Absolutely, Your Honor, and that's why we would ask that this court not focus on the small print paragraph but look at it as a whole and look at the service agreement, the scrollable box. Plaintiffs can't point to a single case that says when you have the terms of the agreement in a scrollable window that is not a submerged hyperlink. There's not a single case that says when you have a scrollable window that has the terms in it that that person wasn't put on constructive notice. Counsel, is there a case in Illinois which says that if you specifically agree to a particular set of terms, you're nonetheless agreeing to other terms that appear on the same page? That's your problem, right? This thing says you understand that by clicking, here's what I'm agreeing to. It's five lines long. What case in Illinois supports the proposition that if you specifically agree to five terms or five lines of terms, you are in fact agreeing to something else too? I'm not aware of any such case, Your Honor, and that's not our contention here. It is your contention here. Otherwise, you can't win this case. Well, Your Honor, it's not an either-or proposition. It's not that clicking on it, I accept it, continue only means this. So in other words, you're just about out of time, but I think it almost has to be your contention. Your Honor, the contention is that Mr. Segaris was put on notice that the terms of this service agreement would be attaching to the credit score that he purchased, and when he completed that purchase, I'd like to reserve the rest of my time for rebuttal. You may do so. It's going to be very short, but you may do so. Ms. Bailey. Good morning, Your Honor. May it please the Court. All a company has to do if it wants to bind online customers to the terms of an agreement is just simply give them notice of those terms and let them know what action will be deemed to accept those terms. So if you prevail in this case, it seems to me it's going to be a very short-term victory because I can't imagine that it would be very difficult for TransUnion to revise this step to do all of the things that it's not doing at the moment. I think that's right. I think that will be a victory, though, if they are forced to revise it. Why does it need to give anybody notice that terms are binding? If you think about Carnival Cruise Lines, there's the front side of the ticket, then there's the back side of the ticket. But there isn't any notice on the front side of the ticket that says, oh, by the way, under the law of contracts, everything on the back side of the ticket is binding. Sure, Your Honor, but if you are going to be deemed by taking an action that you would otherwise do to assent to terms, you have to be informed of that fact. So that's what this Court held in Boomer, right? You know, what this Court held in that case, or in Proceedee, or what the Second Circuit held in some other case, count for squat. This is a case about Illinois law, and if you would cite Illinois cases, it would make me much happier. I'm sorry, Your Honor, I must have mistakenly thought that Boomer was applying Illinois law. No, Illinois law is made by Illinois, right? A federal court may say what it thinks Illinois law is, but we want to find genuine Illinois law. That's why I'm trying to get your adversary and I'm trying to get you actually to cite Illinois cases. The best Illinois case for this Court to look at is the Hubbard v. Dell case. In Hubbard v. Dell, Dell did exactly the kind of thing that we're saying TransUnion should have done here, which is it informed them what terms they would be assenting to and what action... The problem with your interpretation of Hubbard is that you're saying only if exactly what happened in Hubbard reoccurs is there a contract formed, and Hubbard certainly didn't say that. No, I think Hubbard did one example... It didn't say we're establishing the legal minimum for forming a contract. You're correct. Hubbard did not say that specifically, but that's the only case that we have that shows any type of requirement for this type of contract under Illinois law. There are myriad cases, obviously, from other jurisdictions interpreting much more factually similar cases, and if you look at that body of case law... How about Bess v. Direct TV, in which the Illinois court agreed specifically with this court's decision in Gateway, which said that a contract, including arbitration, can be formed without any separate aspect of assent to the arbitration clause? We are not asking for any separate assent to the arbitration clause. Okay, so you're abandoning Judge Zagel's opinion, because that's the cornerstone of his opinion. Judge Zagel's opinion found no assent to the service agreement as a whole, of which the arbitration clause was only one part. In the Hill v. Gateway decision, the user conceded notice of the terms... Whoa, whoa, whoa. I'll do it again. The question is not what we said in Hill v. Gateway. It's what the Illinois courts have said about that issue in cases like Bess and Walker v. Carnival Cruise Lines. The district court's decision is 100% consistent with the rule Your Honor just described in the Bess case, which is that no separate assent to an arbitration clause is required. We are looking at whether there was assent to the service agreement as a whole. The point in Bess was that there's no need for separate assent to a list of terms that arrives in a box. It includes arbitration. It includes warranties. I think you're misunderstanding what I'm trying to get at. In order for there to have been assent to the terms in the box, there would have had to have been notice of some type. That's what each of these cases requires. You're discouraging me from citing Pro CD and other shrink-wrap cases, but that's the exact issue that you're asking me about. In those cases, there's notice that you're going to be accepting contract terms. They're splashed across the software screen. You cannot continue to use the software without signifying your assent. If you decide you don't want to be bound by those terms, you can not use the product, and you can send the product back. Do you know why, by the way, all of these cases, almost all of them seem to be in federal court, so that in trying to figure out what Illinois law is, we get the district judge citing unpublished decisions of the Northern District of Texas from 2007? I'm sorry, Your Honor. Maybe CAFA. I don't know. It's unfortunate that we don't have a larger body of Illinois state cases to draw from. Maybe we should start certifying to the state Supreme Courts and corner them into giving some guidance in this area because it's a huge area of commerce, needless to say. If I may, I'd like to briefly address TransUnion's Braswrap argument. They've said that we haven't cited a single case where there was a scrollable text window on the page and the court didn't enforce the contract. But what they didn't tell you is that in every single one of those cases where the terms and conditions were presented in a scrollable box, there was at least one other feature that was drawing your attention to those terms, telling you you're going to be bound by those terms, telling you that your sale is governed by those terms. Maybe not misleading you. As I say, I've seen plenty of scrollable boxes where the I agree to this is at the bottom of the box. Right. So you're inside the box and you know that that's the only thing. There's no ambiguity about what you're agreeing to. Exactly. And the point is we're not asking for magic words. There's no specific text that has to appear. There are myriad ways to do this. It's not that difficult. Companies do it all the time, and that's one example of what TransUnion could have done that would have been completely sufficient. There are a lot of other examples. They could have added language to the authorization paragraph. I think Your Honor pointed that out. They could have added a banner like Hubbert versus Dell that said your purchase of this credit score will be governed by the terms and conditions of the service agreement with a hyperlink. Click here if you wish to proceed. Yeah, click here. They could have just added an extra checkbox. I can't imagine all the ways that they could have done, and I do think that it's likely that they will fix this after this appeal. I think it's a very easy fix. Have you checked? Do you think they haven't fixed it already? I did check, Your Honor. They've made some minor modifications. They have made the font size in the service agreement window the same as the font size of the authorization paragraph window. They've moved the printable icon above the service agreement window so that it's not between the two. But I think their cosmetic fix is... But this extra paragraph still says the same thing. It still says the same thing. It still says by clicking the I accept and continue button you're agreeing to X, and it still does not mention the service agreement. And although this isn't really 100% pertinent to anything, I take that the complaint Mr. Skouros has is really a consumer fraud type of complaint, that there are two different formulas used for the credit score, and so he got a credit score that was 100 points higher than the score that the dealership got, so he felt that he had not been given the kind of quality of information he thought he was buying. Correct, Your Honor. That's the substance of the underlying allegations. Yeah. Exactly. Yes. Okay. Unless the court has any further questions, I'd be happy to keep talking about the cases, but I think our argument is pretty clear and that it's pretty obvious why the district court's decision should be affirmed. I don't see any further questions, so I thank you very much. Thank you. And you have about a partial minute, Mr. O'Neill, but we'll let you use it. Thank you very much, Your Honor. I'd like to address the court's concern for the lack of Illinois guidance. I agree with counsel for the appellee. Hubbard is the guidance, and it really is right on point. At 359 Illab 3rd at 983 and 984, the district court ruled exactly the way the district court ruled here. The trial court in that case said that there was, quote, no language on the web pages placing the plaintiffs on notice that they were performing an affirmative act that would bind them. It's exactly what the district court ruled here. What the appellate court found significant was the prominent reference to terms and conditions. Just like we have here, Your Honor, there's reference in that box to terms and conditions, and the Illinois appellate court said that should put an Internet user on notice to see what those terms and conditions are. I see my time is up. Thank you very much for your time. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement.